## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

DONNA PATE-FIRES                                         PLAINTIFF

V.                         CASE NO.  3:06CV00126 BD

MICHAEL J. ASTRUE,
Commissioner,
Social Security Administration,[1]                        DEFENDANT

## ORDER

Plaintiff Donna Pate-Fires has appealed the final decision of the Commissioner of

the Social Security Administration (the "Commissioner") denying her claim for

Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security

Act (the "Act").  For reasons that follow, the decision of the Administrative Law Judge

("ALJ")[2] is affirmed.

I.     **Procedural History:**

Plaintiff filed an application for SSI benefits on February 25, 2004, alleging that

she had been disabled since January 1980 (Tr. 61-63), as a result of various mental

impairments.  The ALJ held a hearing on February 14, 2006, and the Plaintiff appeared

with her attorney, Anthony W. Bartels.  Ken Waits, a vocational expert ("VE"), also

provided testimony.  At the hearing, Plaintiff amended her onset date to February 25,

---

[1]  Michael J. Astrue was sworn in as the Commissioner of Social Security on
February 12, 2007.  He is therefore substituted for Jo Anne B. Barnhart under
Fed.R.Civ.P. 25(d)(1).

[2]  The Honorable David J. Manley, Administrative Law Judge.

2004.  On April 5, 2006, the ALJ issued a decision denying Plaintiff benefits.  (Tr. 12-25).  Plaintiff filed the current Complaint for Review of Decision (docket entry #2) on July 11, 2006.

## II.    Findings of the ALJ:

The ALJ followed the five-step sequential analysis set out in the social security regulations, 20 C.F.R. §§ 416.920(a)-(g) (2003), finding: (1) that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability; (2) that she suffered from a "severe impairment," as that term is interpreted for purposes of the Social Security Regulations; (3) that Plaintiff did not have an impairment, or combination of impairments, that rose to the level of severity for any impairment listed in Appendix 1 to Subpart P, Regulation No. 4; (4) that Plaintiff maintained the residual functional capacity ("RFC") to perform medium work;[3] and (5) that Plaintiff was not prevented from performing her past relevant work.  Based on these findings, the ALJ found Plaintiff was not disabled at step four of the sequential evaluation process.  20 C.F.R. § 416.920(f) (2003).

Plaintiff contends that the findings of the ALJ are not supported by substantial evidence and contain errors of law based on the following: (1) the ALJ erred by not

---

[3] "Medium work" is defined as work involving the "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

giving Plaintiff's treating physician's opinion great or controlling weight; and (2) the ALJ

erred by finding that Plaintiff possessed the RFC to perform her past relevant work.

The Commissioner argues that the ALJ's decision is supported by substantial

evidence because: (1) the ALJ properly evaluated the opinion of Plaintiff's treating

physician; and (2) the Plaintiff did not meet her burden to prove disability.

**III.   Legal Analysis:**

In reviewing the decision of the ALJ, this Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.

42 U.S.C. § 405(g).  This review function is limited, and the decision of the ALJ must be

affirmed "if the record contains substantial evidence to support it."  *Edwards v. Barnhart,*

314 F.3d 964, 966 (8th Cir. 2003).  "Substantial evidence is less than a preponderance but

enough so that a reasonable mind could find it adequate to support the decision."  *Id.*

Evidence that both supports and detracts from the ALJ's decision must be considered, but

the decision cannot be reversed "merely because there exists substantial evidence

supporting a different outcome."  *Id.*  "Rather, if, after reviewing the record, . . . it is

possible to draw two inconsistent positions from the evidence and one of those positions

represents the [ALJ's] findings, we must affirm the decision of the [ALJ]."  *Young v.*

*Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted).

Thus, the Court's function on review is to determine whether the Commissioner's

decision is supported by substantial evidence on the record as a whole and whether it is

based on legal error.  *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).

A.   **Substantial Evidence in the Record**:

An ALJ has a duty to fully and fairly develop the record before making a disability determination.  *Thompson v. Astrue*, 226, F.3d 617, 620 (8th Cir. 2007).  This duty includes the responsibility of ensuring that the record includes evidence from either a treating or examining physician.  *Id.* (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).  The record in this case provides extensive and substantial evidence supporting the ALJ's decision.

Plaintiff established a long history of mental impairments and substance abuse. She reported that she started smoking marijuana on a daily basis at age 14.  (Tr. 238)  At age 16, Plaintiff first began experiencing mental impairments.  (Tr. 111, 232)

The medical record indicates that on January 30, 1999, Plaintiff was admitted in the Western Mental Health Institute ("WMHI").  (Tr. 170-173)  Plaintiff had been arrested for threatening to kill her husband and neighbors and was brought to WMHI for observation.  (Tr. 170)  Dr. Kevin Turner, a staff psychiatrist at WMHI, diagnosed Plaintiff with bipolar I disorder, with severe psychotic features, and gave her a Global Assessment of Functioning ("GAF") score of 40.  (Tr. 169)  Dr. Turner stated "the patient probably became noncompliant with medications leading to manic behavior as evidenced by threatening to kill husband and neighbors."  (Tr. 167)  Plaintiff was discharged after

4

she "made overall improvement in her symptomatology and was more organized in her thought processes." (Tr. 168)  Dr. Turner also stressed the importance of mental health follow-up and medication compliance. (Tr. 168)

On December 5, 2002, Plaintiff was again admitted in the WMHI, after being arrested for disorderly conduct. (Tr. 154-166)  Plaintiff had attacked her husband and threatened to kill him and his mother. (Tr. 154, 163)  Plaintiff had stopped taking her medication about eight months before being admitted and refused to keep her outpatient mental health appointments. (Tr. 154, 163)  Dr. Jeffrey Robbins, a staff psychiatrist at WMHI, stated that Plaintiff "had been given a diagnosis previously of bipolar disorder, however there was no evidence of this." (Tr. 155)  He stated that Plaintiff had deficits in her personality, but there was no evidence of overt psychosis, depression or mania. (Tr. 155)  Dr. Robbins stated that Plaintiff appeared more immature than manic. (Tr. 155)  On December 11, 2002, Dr. Robbins determined that Plaintiff no longer met commitment criteria and was ready to return to jail. (Tr. 155)  He diagnosed Plaintiff with Depressive Disorder and gave her a then current GAF score of 50. (Tr. 156)

On December 15, 2002, four days after discharge from WMHI, Plaintiff was transferred from the Poinsett County Jail to the Arkansas State Hospital ("ASH"). (Tr. 216-219)  Her initial GAF score was 21. (Tr. 218)  Plaintiff was medicated and placed in therapeutic classes. (Tr. 217) She was discharged after her psychiatric condition improved and she was instructed to follow up with Mid South Health Systems ("MSHS").

5

(Tr. 218)  She was diagnosed with bipolar disorder, manic and severe with psychotic features, and given a GAF score of 45.  (Tr. 219)

Plaintiff began seeing Dr. David Erby at MSHS after her discharge from the ASH. On January 23, 2003, Dr. Erby diagnosed Plaintiff with bipolar I disorder without psychotic factors, and gave Plaintiff a GAF score of 50.  (Tr. 133)  On July 10, 2003, Plaintiff was discharged from outpatient treatment at MSHS due to no contact for sixty days. (Tr. 132)  Plaintiff was readmitted to MSHS on December 20, 2003, after being arrested for not paying for gasoline.  (Tr. 130)  According to Plaintiff's sister, Plaintiff had not taken her medication in months.  (Tr. 130-131)  Plaintiff was held pending an involuntary commitment order.  (Tr. 131)  Ten days later, on December 30, 2003, Plaintiff was admitted to the ASH involuntarily.  (Tr. 95, 192)  After treatment, Plaintiff's condition was "[f]air given that the patient continues with medication compliance as she has shown while in the hospital."  (Tr. 99, 194)  Plaintiff's GAF score upon discharge was 51.  (Tr. 98, 195)

On February 25, 2004, Plaintiff filed for disability.  On February 26, 2004, Plaintiff was seen at MSHS again by Dr. Erby.  He noted that since Plaintiff's discharge from the ASH on January 23, 2004, she had stopped taking her medicine and relapsed to a degree.  (Tr. 125)  At this appointment, Dr. Erby opined that Plaintiff was not capable of participating in gainful employment.  (Tr. 125)  At the next appointment on March 23, 2004, Dr. Erby noted that Plaintiff was feeling much better, her mind was not nearly as

foggy, she did not have racing thoughts, she showed no evidence of mania or hypomania, and she had a GAF score of 54.  (Tr. 124)  On June 4, 2004, Plaintiff was discharged from MSHS because she could not be reached by telephone or mail.  (Tr. 121-123)

On June 9, 2004, Plaintiff underwent a consultative psychological evaluation performed by Dr. George DeRoeck.  (Tr. 111-118).  Dr. DeRoeck estimated Plaintiff's intellectual functioning to be in the below average range.  (Tr. 115)  Plaintiff indicated that she might be able to engage in a low stress job and that it was stress, not bipolar disorder, that caused her problems.  (Tr. 112)  Dr. DeRoeck diagnosed Plaintiff as having schizoaffective disorder versus bipolar disorder, with periodic psychotic features, alcohol, cannabis, and opiate abuse (patient stated remission); dependent personality traits without disorder; and gave her a GAF score of 58.  (Tr. 117)

On October 21, 2004, Plaintiff saw Dr. Erby again.  She was not manic or depressed, and promised to be more compliant with treatment. (Tr. 335A).  On April 4, 2005, Plaintiff was admitted to the Crisis Residential Unit at MSHS on a voluntary basis by Dr. Erby. (Tr. 335)  Plaintiff did not appear manic, depressed, or otherwise psychotic, even though she had stopped taking her medication.  (Tr. 231)  She was given a GAF score of 52.  (Tr. 235)  Plaintiff left the crisis unit after a few days, against medical advice, and with only part of her medication.  (Tr. 174)

Plaintiff was again admitted to the Crisis Residential Unit at MSHS on April 16, 2005, after being arrested for threatening to beat someone up.  (Tr. 237)  She was held

pending a commitment order to the ASH. (Tr. 237). Plaintiff was again noncompliant with her medication. (Tr. 241) She indicated that she had smoked a "blunt" that made her go "crazy." (Tr. 174)

On May 5, 2005, Plaintiff was transferred to the ASH. She was admitted on a forty-five day court order granted May 25, 2005. She was diagnosed with bipolar I disorder and given a GAF score of 41. (Tr. 178) She was discharged on June 3, 2005. Plaintiff's psychiatric condition was stable and she was to live by herself in her apartment. (Tr. 177)

On June 7, 2005, Plaintiff saw Dr. Erby again. She reported that she was in good medication compliance, and denied symptoms of mania or psychosis. (Tr. 229) Dr. Erby stated, "Donna appears to be disabled for any type of employment. This disability is permanent." (Tr. 229) However, Dr. Erby also stated that Plaintiff's schizoaffective disorder was in remission and gave her a GAF score of 56. (Tr. 230)

Dr. Erby saw Plaintiff again on June 30, 2005. At this time, she was compliant with her medication. Plaintiff did not appear to be depressed or manic and was not having visions or hearing voices. (Tr. 228) Plaintiff was given a GAF score of 54. (Tr. 228).

On September 6, 2005, Plaintiff started a master treatment plan at MSHS. Plaintiff was to be monitored for medication compliance and was to attend individual and group

therapy sessions multiple times per week.  (Tr. 224)  Plaintiff was given a GAF score of

54.  (Tr. 223)  This is the last record of treatment before the hearing in this matter.

After reviewing the extensive medical record, the ALJ noted that Plaintiff had a

general pattern of returning to treatment for active mental symptoms only after being

arrested.  (Tr. 20-21)  Failure to follow a prescribed course of remedial treatment without

good cause is grounds for denying an application for benefits.  *Roth v. Shalala*, 45 F.3d

279, 282 (8th Cir. 1995); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989).

The ALJ also considered Plaintiff's frequent noncompliance with medication

management.  The ALJ determined that when Plaintiff was compliant with her

medication, her GAF scores reflected only moderate symptoms.  (Tr. 21-23)  Impairments

that are controllable or amenable to treatment do not support a finding of disability.

*Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997).  There is substantial evidence in

the record to support the ALJ's determination that Plaintiff's symptoms were only

moderate when she was compliant with medication management.

**B.**     <u>**Assessment of Physician Opinions:**</u>

Plaintiff states that the ALJ erred by not giving the proper weight to the opinions

of her treating physician, Dr. Erby.  Specifically, Plaintiff contends Dr. Erby's March 2,

2004 opinion, that Plaintiff was not capable of participating in gainful employment,

should have been given great or controlling weight.  (Tr. 125)

If the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the applicant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).  Dr. Erby opined that Plaintiff was not capable of participating in gainful employment, she was "gravely disabled," and that her disability was permanent.  (Tr. 125, 232, 229)  After discussing inconsistencies in Dr. Erby's treatment notes and the medical record as a whole, the ALJ declined to give controlling weight to "the isolated 'disability' opinion of Dr. Erby."  (Tr. 21)  This Court cannot find error in the ALJ's decision.

In order to receive controlling weight, the treating physician's opinion must concern the "nature and severity of impairments."  Social Security Ruling 96-2p.  A treating physician's opinion about whether an individual is disabled or unable to work "can never be entitled to controlling weight or given special significance."  Social Security Ruling 96-5p at *5.  This is because a determination of "disability" is an administrative determination reserved to the Commissioner.  *Id.*  The ALJ could not disregard Dr. Erby's opinion, however.  *Id.*  When the opinion of a treating source is given less than controlling weight, it is proper to consider 1) the length of the treatment relationship and frequency of examination, 2) the nature and extent of the treatment elationship, 3) the extent of relevant evidence supporting and explaining the opinion,

4) the consistency of the opinion with the record as a whole, 5) whether the treating

source is a specialist, and 6) other factors which support or contradict the opinion.  20

C.F.R. §  404.1527(d).

The ALJ noted the inconsistencies in Dr. Erby's treatment notes and the medical

record as a whole.  (Tr. 21)  The ALJ determined that the longitudinal treatment notes of

Dr. Erby and other mental health professionals and Plaintiff's GAF scores when

compliant with medications did not support Dr. Erby's "disability" assessment.  (Tr. 21)

"It is well established that an ALJ may grant less weight to a treating physician's opinion

when that opinion conflicts with other substantial medical evidence contained within the

record." *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).  "Moreover, an ALJ

may credit other medical evaluations over that of the treating physician when such other

assessments are supported by better or more thorough medical evidence." *Id*. at 1014

(internal quotations and citations omitted).  Dr. Erby noted that "[t]he most

comprehensive evaluation in the chart was that done by disability examiner Dr. George

DeRoeck."  (Tr. 232)  Dr. DeRoeck's evaluation noted moderate impairments, and he

gave Plaintiff a GAF score of 58.  (Tr. 111-118)

"It is the ALJ's function to resolve conflicts among the opinions of various treating

and examining physicians. The ALJ may reject the conclusions of any medical expert,

whether hired by the claimant or the government, if they are inconsistent with the record

as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir.2001) (internal

11

citations omitted).  The ALJ did not reject Dr. Erby's opinions but instead weighed the

opinions as required by 20 C.F.R. § 404.1527.  After review of the substantial medical

record available in this case, and of the ALJ's decision, the Court cannot find error in the

ALJ's assessment of the various medical opinions.

**C.**   **Plaintiff's RFC Assessment and Past Relevant Work:**

Plaintiff was a 42-year-old with a high school education at the time of the hearing

in this matter.  She had past relevant work as a stocker for Wal-Mart.  (Tr. 12, 82-86)

The ALJ found that Plaintiff had the RFC to perform medium work that was entry level,

unskilled work, where interpersonal contact was no more that incidental to work

performed and the complexity of tasks was learned and performed by rote with few

variables and little judgment, and where the supervision was simple, direct, and concrete.

(Tr. 22-24)  The ALJ received testimony from the VE.  (Tr. 360-362)  The VE testified

that with the RFC and additional limitations found by the ALJ, Plaintiff could perform

her past relevant work as a stocker.  (Tr. 361-362)

It is the Plaintiff's burden, not the Commissioner's, to prove the Plaintiff's RFC.

*Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004); *Baldwin v. Barnhart*, 349 F.3d

549, 556 (8th Cir. 2003);  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001);

*Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Anderson v. Shalala*, 51 F.3d

777, 779 (8th Cir. 1995).  The ALJ's role is to consider the combination of Plaintiff's

mental and physical impairments to determine Plaintiff's RFC.  *Masterson,* 363 F.3d at

737.  "The ALJ must determine the claimant's RFC based on all relevant evidence,

including medical records, observations of treating physicians and others, and claimant's

own descriptions of his or her limitations."  *Id*.  As previously discussed, the ALJ

extensively considered Plaintiff's mental impairments.  See Sec. III. A. and B. above.

The ALJ also considered Plaintiff's physical impairments as required.  (Tr. 15, 20)

      The record contains evidence that Plaintiff had severe lumbar degenerative disc

disease.  Magnetic resonance imaging ("MRI") findings showed a "tiny" disc bulge with

no severe canal or lateral recess stenosis at the L4-L5 section of Plaintiff's spine.  (Tr.

220-221)  Plaintiff also had a disc bulge at the L5-S1 section of her spine.  (Tr. 220-221)

Each bulge might have had slight contact on the nerve root.  (Tr. 221)  The ALJ

considered these finding along with Plaintiff's treatment record.  (Tr. 15)  The ALJ noted

that after the MRI findings, there was no record of Plaintiff seeking treatment for her

back pain.  Plaintiff did discuss her back pain with her treating physician, though there

was no evidence of any treatment or medication beyond over-the-counter Tylenol.  (Tr.

90, 227)  Plaintiff testified to being able to perform a wide range of physical exertion.

(Tr. 352-355)  Plaintiff's list of daily activities included doing laundry, dishes, changing

sheets, ironing, vacuuming, taking out trash, washing the car, mowing the lawn, and

raking leaves.  (Tr. 89-90)  Despite extensive physical examinations while hospitalized,

no physician found Plaintiff had any physical limitations.  (Tr. 155, 193, 217)  In fact,

Plaintiff herself testified that her problems were not physical.  (Tr. 362)  After reviewing

the medical record and other relevant evidence, the Court finds that the ALJ's RFC

determination was supported by substantial evidence.

## IV.    **Conclusion**:

There is substantial evidence in the record to support the Commissioner's denial of

SSI benefits to Plaintiff.  It is clear, as the ALJ pointed out, that Plaintiff suffers from

several impairments.  However, there is sufficient evidence in the record to support the

ALJ's determination that Plaintiff retains the capacity to perform her past relevant work..

Accordingly, Plaintiff's appeal is DENIED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 28th day of September, 2007.


_____
UNITED STATES MAGISTRATE JUDGE

14